IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OBIOMA ATUFUNWA, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-7027 |
| | : | |
| PRIME HEALTHCARE SERVICES INC, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **September 10, 2026**

Plaintiffs bring this action against Defendants Prime Healthcare Services, Inc. and Prime Healthcare Foundation, Inc. (collectively known as the "Prime Defendants"); Prime Healthcare Services-Roxborough LLC d/b/a Roxborough Memorial Hospital, Prime Healthcare Services-Lower Bucks, LLC d/b/a Lower Bucks Hospital, and Prime Healthcare Services-Suburban Hospital, LLC d/b/a Suburban Community Hospital (collectively known as the "Hospital Defendants"); and Dr. Prem Reddy. Plaintiffs, a group of 30 physicians who staffed the emergency departments at the Hospitals, seek to recover unpaid wages from the Defendants. They advance three legal theories under which they are entitled to relief: (1) Pennsylvania's Wage Payment Collection Law ("WPCL"), (2) implied-in-fact contract, and (3) unjust enrichment. All Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiffs oppose the motion. Because the Court finds the Plaintiffs have sufficiently pled their claims at this stage in the litigation, the motion is denied.

**BACKGROUND**

When evaluating a Rule 12(b)(6) motion, the court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Therefore, for the purposes of this motion, the Court accepts all factual allegations stated in the Plaintiffs' Amended Complaint.

The Prime Defendants contracted with Emergency Department Management Services ("EDMS") to staff emergency rooms at the Hospitals. Amended Compl. ¶ 1, ECF No. 10. The Plaintiffs allege they were jointly employed by the Prime Defendants, the Hospital Defendants, and Dr. Prem Reddy. *Id.* at ¶ 9.

Defendant Prime Healthcare Services, Inc., is the fifth largest for-profit health system in the United States. *Id.* at ¶ 10. They actively manage the hospitals they own, as well as the hospitals owned by Prime Healthcare Foundation, Inc. *Id.* at ¶ 11. Prime Healthcare Foundation Inc. is a 501(c) corporation which operates 18 hospitals. *Id.* at ¶ 13. Defendant Prem Reddy and Prime Healthcare Services, Inc. exercise significant control over Prime Healthcare Foundation Inc. Their operations are related; they are subject to common management and have centralized control of labor. *Id.* at ¶ 15. The Hospital Defendants are hospitals in eastern Pennsylvania, owned and controlled by the Prime Defendants, that contracted with National Emergency Services Health ("NES"), an EDMS that Prime Healthcare worked with to staff their emergency rooms. *Id.* at ¶ 3.

In September 2024, NES delayed payment to the 30 Plaintiffs who staffed the emergency rooms at the Hospitals. *Id.* at ¶ 4. By November 22, 2024, the Prime Defendants made arrangements to work with a different EDMS. *Id.* at ¶ 5. The Plaintiffs were not paid the eight to ten weeks of wages owed to them for staffing the Hospitals' emergency rooms during that time. *Id.* at ¶ 6.

Plaintiffs allege the Prime Defendants, Hospital Defendants, and Dr. Prem Reddy exerted control over the methods and manner in which the Plaintiffs carried out their work. *Id.* at ¶¶ 46-65, 78-87. Dr. Prem Reddy personally issued directives to Plaintiffs during quarterly review meetings and personally oversaw the implementation of protocols at the hospitals. *Id.* at ¶ 47.

Prime leadership exerted control over the hospitals through its executive leadership, including Dr. Prem Reddy, ensuring that directives given during quarterly review meetings were carried out by the physicians in the Emergency Rooms, including Plaintiffs. *Id.* at ¶ 52. This included personally reviewing patient cases; directing Plaintiffs to limit the use of CAT scans, certain blood tests, and CT scans on elderly patients; directing Plaintiffs on which patients to admit; monitoring door-to-room time and doctor-to-patient time; and instructing site directors on how to deal with grievances up to and including termination. *Id.* at ¶¶ 49, 53.

The Plaintiffs also allege that the Emergency Departments are an integral part of the Defendant's business. Emergency departments are important to a hospital's profitability because they generate admissions. *Id.* at ¶ 71. These admissions generate profitable treatments and services for hospitals, and the Hospital Defendants here collected financial benefits from these admissions. *Id.* at ¶¶ 72, 73. As the Hospitals owner, the Prime Defendants and Dr. Prem Reddy were enriched by this revenue collection through both financial and reputational benefits. *Id.* at ¶¶ 75, 77.

On January 21, 2026, Defendants filed a motion to dismiss. ECF No. 13. On February 13, 2026, Plaintiffs filed a response. ECF No. 17. On March 6, 2026, Defendants filed a reply. ECF No. 19.

**STANDARD**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable

inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

The Defendants argue the Plaintiffs' complaint should be dismissed for failure to state a claim. They argue that the Plaintiffs do not sufficiently allege facts to plausibly support their claim that the Defendants are joint employers of Plaintiffs, nor do they support the existence of an actual or implied contract between the Defendants and the Plaintiffs. Lastly, they argue the Plaintiffs do not support their claim of unjust enrichment because the Defendants did not retain any benefit from the Plaintiffs' services, and if they did, they were not unjustly retained. Many of the arguments the Defendants raise are questions typically unsuitable for resolution on a motion to dismiss. The Court will deny the motion because the Plaintiffs have adequately pled their claims at this stage in the litigation.

**CLAIM I: WPCL**

Plaintiffs bring a claim against all Defendants under the WPCL. Amended Compl. ¶112-116. To prevail on a WPCL claim, the plaintiff must establish: (1) the entity that withheld wages is an 'employer' under the WPCL; (2) the plaintiff is contractually owed the wages; and (3) the employer withheld the wages. *See Minehan v. McDowell*, No.21-5314, 2023 WL 5432508, at *15 (E.D. Pa. Aug. 22, 2023) (aff'd, No. 23-2737, 2024 WL 4403873 (3d. Cir. Oct. 4, 2024)). The Defendants argue that Plaintiffs do not state a claim under the WPCL because (1) they do not plausibly allege joint employment, (2) they do not plausibly allege the existence of a contract and (3) they do not plead any basis for imposing liability on the Prime Defendants and Reddy. The Court will address each argument in turn.

The WPCL defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of

any of the above-mentioned classes employing any person in this Commonwealth." *Timko v. NSPA Lounge LLC*, No. 23-cv-1307, 2025 WL 2162470, at *22 (W.D. Pa. July 30, 2025) (citing 43 P.S. § 260.2a). "[T]he existence of an employer-employee relationship under the WPCL centers on whether the employer not only controls the result of the work but directs the manner in which the work is accomplished." *Id.* (citing *Gladstone Tech., Partners, LLC v. Dahl*, 222 F. Supp. 3d 432, 439 (E.D. Pa. 2016)). An employee may have multiple employers. Joint employers exert "significant control" over an employee, even if they do not have "ultimate" control. *See Talarico v. Public Partnerships, LLC,* 837 Fed. Appx. 81, 84 (3d Cir. 2020). To determine whether an alleged employer is a joint employer under the WPCL, the Third Circuit applies the *Enterprise* test. *Id.* Courts primarily consider four factors, though this list is not exhaustive; relevant to the inquiry is the "total employment situation and the economic realities of the work relationship." *Id.* (citing *In re Enterprise Rent-A-Care Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 469 (3d. Cir. 2012)). The relevant factors are:

> (1) the alleged employer's authority to hire and fire the relevant employee; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employee's conditions of employment (compensation, benefits, and work schedules, including the rate and method of payment); (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes. *Id.*

The *Enterprise* test is "highly fact specific." *Morales v. Aqua Plaza LLC*, No. 20-6690, 2022 WL 1718050, at *3 (D.N.J. May 27, 2022) (citing *Thompson v. Real Estate Mortg. Network,* 748 F.3d 142, 148-49 (3d Cir. 2014)). Courts in this Circuit have typically found discovery is necessary for the plaintiff to define the employment relationship. *See Anderson v. Finley Catering*

*Co., Inc.*, 218 F. Supp. 3d 417, 423 (E.D. Pa. 2016); *see also Thompson v. US Airways, Inc.*, 717 F. Supp. 2d 468, 479 (E.D. Pa. 2010) (refusing to dismiss a claim that defendants are "joint employers" without the opportunity for discovery, noting that the issue is "intensely factual").

As to the first *Enterprise* factor, authority to hire or fire, the Plaintiffs allege sufficient information to support the conclusion that the Defendants were Plaintiffs' employers. The Plaintiffs allege "the Prime-owned Hospitals, on behalf of themselves and as agents of Prime Defendants and Defendant Reddy, retained and exercised the right to discipline and terminate ER staff provided to Prime Defendants by NES." Amended Compl. ¶ 62. Further, they allege the Prime Defendants controlled NES recruiting. *Id.* at ¶ 79. The Defendants point to allegations in the Amended Complaint that NES was responsible for "procuring practitioners" and set the "duration of their engagements and the terms of renewal." Def. Mot. to Dismiss, at 5-6. However, the fact that NES may have had the authority to hire or fire the Plaintiffs does not negate a finding that the Defendants were joint employers of the Plaintiffs. *See Buka v. Allegheny County,* 2021 WL 1197343, at *4 (W.D. Pa. Mar. 30, 2021) (finding allegations that the County and County Council both exercised the authority to hire and fire was sufficient at the motion to dismiss stage to support a finding that the defendants were joint employers of the plaintiff); *see also Myers v. Garfield & Johnson Enters.*, 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010) (explaining that the joint employer doctrine acknowledges that an individual may be employed by two separate entities that have divided or shared the duties of an employer between themselves).

As to the second *Enterprise* factor, authority to promulgate rules and set the conditions of employment, the Plaintiffs contend that the Prime Defendants and Dr. Prem Reddy actively manage the hospitals, setting uniform policies and protocols. Amended Compl. ¶¶ 11, 18. Further, while the complaint states that EMS was responsible for compensation and payroll services, (Amended Compl. ¶¶ 78, 83), this does not necessarily mean the Defendants also were employers

of the Plaintiffs, even if they were not the employer in charge of payroll. Lastly, in their reply brief, the Defendants argue hospitals are unique because they must issue protocols to comply with their government-mandated duties. ECF. No. 13 at 3. However, this argument is unpersuasive. Compliance with the law does not negate the element of control needed to establish joint employment. *See Barry Benzing, et al. v. Prime Healthcare Services, Inc., et al.*, No. 25-cv-18593, 2026 WL 2150695, at *7 (D.N.J. July 27, 2026).

As to the third *Enterprise* factor, involvement in day-to-day supervision, the Plaintiffs pled the Defendants issued directives to the Plaintiffs, instructed them to use certain types of tests, set protocols, and provided directives on when to admit patients. ECF No. 17 at 7-8. For instance, the Defendants directed Plaintiffs to limit the use of CAT scans, certain blood tests, and certain medications. Amended Compl. ¶ 49. They also directed them on the amount of time they should spend with patients, to not order CT scans for elderly patients that fell (despite this instruction conflicting with recognized standards of care), and controlled which types of patients to admit. *Id*. The Plaintiffs further alleged that hospital-level leadership, on behalf of the Hospital Defendants and as agents of the Prime Defendants and Dr. Prem Reddy, controlled their work by requiring them to attend department meetings led by Prime's CEO, restricting how the Plaintiffs could direct nurses, requiring certain Plaintiffs to obtain permission before ordering tests, and even instructing site directors on disciplinary procedures when grievances arose, up to and including discharge of the practitioner. *Id.* at ¶ 53. They also alleged that Dr. Prem Reddy specifically issued directives during quarterly meetings and personally oversaw the implementation of uniform protocols throughout the Hospitals. Amended Compl. ¶ 47. Again, at this early stage in the litigation, before the Plaintiffs have had access to discovery, the Court finds this is sufficient.

As for the final *Enterprise* factor, control over employee records, the Court agrees with the Defendants that NES was in control of the Plaintiffs' payroll, insurance, and taxes. There are

insufficient allegations that the Defendants were also in control of these matters. However, the *Enterprise* test does not turn on any individual factor. There could be a finding that an alleged employer is a joint employer "even if not all of the *Enterprise* factors are present." *Talarico*, 837 Fed. Appx. at 84. Therefore, at this point in the litigation, considering how the *Enterprise* test is generally unsuitable for resolution by a 12(b)(6) motion, the Court concludes that the Plaintiffs have sufficiently alleged that the Defendants are the Plaintiffs' joint employers.

The Defendants' second argument with respect to Plaintiffs' WPCL claim asserts that Plaintiffs failed to plausibly allege evidence of a contract between the parties. The Third Circuit has held that "the WPCL does not create a right to compensation . . . rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003). The plaintiff must be able to point to either a formal employment contract or the formation of an implied contract to pursue a WPCL claim. *See Mackereth v. Kooma, Inc.*, No. 14-04824, 2015 WL 2337273, at *10 (E.D. Pa. May 14, 2015). The Plaintiffs point to their contract with NES, which they allege the Defendants were bound by because they are joint employers of the Plaintiffs. Further, the Plaintiffs allege an implied contact existed, as discussed further in Claim II. At this stage, the Court finds that either theory is sufficient for the Plaintiffs to allege a claim under the WPCL.

Lastly, the Defendants argue the Plaintiffs do no plead any basis for imposing liability on the Prime Defendants or Dr. Prem Reddy. The WPCL also "imposes personal liability on high-ranking corporate officers for employees' unpaid wages." *Schneider v. IT Factor Prods.*, No. 13-5970, 2013 WL 6476555, at *5 (E.D. Pa. Dec. 10, 2013). "To hold an 'agent or officer' personally liable for unpaid wages, evidence of an active role in decision making is required." *Id.*; *see also Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid-Atl. Promotions, Inc.*, 856 A.2d 102, 105 (Pa. Super. Ct. 2004). As the Court's discussion of the *Enterprise* factors above

illustrates, the Plaintiffs sufficiently alleged that the Prime Defendants and Dr. Prem Reddy exercised control over the hospital operations in a manner where the Prime Defendants and Dr. Prem Reddy could also be considered the Plaintiffs' employers under the WPCL.

**CLAIM II: IMPLIED CONTRACT**

Plaintiffs bring a claim against all Defendants for breach of implied contract. Amended Compl. ¶ 124-140. The Third Circuit has held "an implied-in-fact contract is a contract arising from mutual agreement and intent to promise, but in circumstances in which the agreement and promise have not been verbally expressed." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004). Both express and implied contracts carry the same legal effect; the difference is in "the way the parties manifest their mutual assent." *Id.* Under Pennsylvania law, "offer and acceptance need not be identifiable and the moment of formation need not be precisely pinpointed." *Oxner v. Cliveden Nursing & Rehabilitation Cetner, PA, L.P.,* 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015) (citing *Ingrassia Constr. Co., Inc. v. Walsh,* 486 A.2d 478, 483 (Pa. Super. Ct. 1984)).

Defendants argue the Plaintiffs fail to demonstrate assent on the part of the Hospitals, the Prime Defendants, and Dr. Prem Reddy. *Mot.* at 11-12. As for the Hospitals, the Defendants contend that the acceptance of services is insufficient to show mutual assent, and further that the Plaintiffs fail to allege any of the material terms of the contract. *Id.* at 11. However, as the Pennsylvania Superior Court has held, "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the later expresses no dissent or avails himself of the services." *Martin v. Little, Brown & Co.,* 450 A.2d 984, 977 (Pa. Super. Ct. 1981). The Plaintiffs allege they continued to show up to work at the Hospitals even after NES stopped paying them, and the Hospitals accepted these services. At the motion to dismiss stage, this is sufficient evidence of the existence of an implied contract between the parties.

Further, as to the Prime Defendants and Dr. Prem Reddy, the Defendants argue there are no allegations the Plaintiffs performed services on behalf of these defendants and no allegations showing consideration flowed to these defendants. ECF No. 13 at 12. There are sufficient allegations in the complaint to make out a colorable claim against these Defendants. The Plaintiffs allege Prime directed the Hospitals to accept services without payment, and Prime benefitted from the Plaintiffs' services. Amended Compl. ¶¶ 75, 134. The Defendants take issue with the factual support for these statements; however, these arguments are inappropriate at the motion to dismiss stage.

**CLAIM III: UNJUST ENRICHMENT**

Lastly, Plaintiffs bring a claim in the alternative against all Defendants for quantum meruit, or unjust enrichment.[1] Amended Compl. ¶ 141-157. To prove a claim of unjust enrichment in Pennsylvania, the plaintiff must show there were "benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value." *Allegheny General Hosp. v. Phillip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000) (citing 16 Summary of Pa.Jur.2d *Commercial Law* § 2.2 (1994)). The Defendants argue the claim for unjust enrichment fails because there was no benefit conferred on the hospitals. Alternatively, if there was a benefit, there was no injustice in the Hospital retaining the benefit. ECF No. 13 at 13-14.

---

[1] The Court notes the Amended Complaint lists the cause of action as one for Quantum Meruit, however both the Plaintiff and the Defendant then proceed to discuss the cause of action as one of unjust enrichment. In Pennsylvania, the two terms are synonymous. *See Bertinelli v. Transcontinental Gas Pipe Line Company, LLC*, 2020 WL 7260993, at * 4 (M.D. Pa. Dec. 10, 2020). Quantum Meruit provides the remedy to compensate for the reasonable value of services lost due to unjust enrichment. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 594 n.8 (Pa. 2010). The Court will therefore treat Claim III as a claim of unjust enrichment.

The Defendants clearly retained a benefit from the Plaintiffs' services. The Plaintiffs provided a service to the Hospitals by staffing their emergency rooms. They continued to show up and staff the emergency rooms for weeks after they stopped receiving payment. Amended Compl. ¶ 143. The Plaintiffs clearly allege that the Hospitals generated revenue from their emergency rooms, and as a result the Prime Defendants and Dr. Prem Reddy were also enriched through financial and reputational benefits. *Id.* at ¶ 146-49.

As to the question of whether the retention of such a benefit is unjust, the Defendants are right to highlight the doctrine does not apply merely because a benefit was retained. The retention, under the circumstances, must also be unjust. *See Meehan v. Cheltenham Township,* 189 A.2d 593, 596 (Pa. 1963). This is a highly factual question. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Form of Malone Middleman, P.C.,* 179 A.3d 1093, 1103 (Pa. 2018). The Defendants attempt to characterize this portion of the complaint as analogous to cases where third parties are "incidentally" benefited from contracts arising between two other parties, arguing that such innocent third parties are not unjustly enriched by the failure of the contracting party to perform. *See Meehan v. Cheltenham Tp.*, 189 A.2d 593, 596 (Pa. 1963) (finding that a township was not enriched by the work completed by a subcontractor when a developer defaulted on payments because the township never requested the construction); *EMC Outdoor, LLC v. Stuart,* 2021 WL 1224064, at *15 (E.D. Pa. Mar. 31 2021) (finding the plaintiff could not satisfy the elements of an unjust enrichment claim where the defendants never requested the services, noting caselaw in Pennsylvania courts that third parties who are *indirectly* benefitted by a contract are not liable for nonperformance unless the third party requested the benefit). But, it is clear the Defendants were not indirectly benefitted from the Plaintiffs' contracts with EMS. The Defendants explicitly contracted with NES to staff their emergency rooms, specifically requesting the benefit

of the Plaintiffs' services. Amended Compl. ¶ 1. This argument is unpersuasive without further factfinding on the issue.

**CONCLUSION**

Because the Plaintiffs have sufficiently pled factual allegations to plausibly support their claims, the Motion to Dismiss will be DENIED.

BY THE COURT:

/s/ Juan R. Sánchez

Juan R. Sánchez, J.